UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SABRINA M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> SSA COMMISSIONER, et al., <br><br> Defendants. | Case No.  25-cv-08597-TSH <br><br> **ORDER RE:  CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 10, 13 |

## I.    INTRODUCTION

Plaintiff Sabrina M. moves for summary judgment to reverse the Social Security Administration's denial of her claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 10 ("Pl.'s Mot.").  The Commissioner cross-moves to affirm.  ECF No. 13 ("Def.'s Mot.").  Plaintiff filed a reply.  ECF No. 15 ("Pl.'s Reply").  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated below, the Court **GRANTS** Plaintiff's motion and **DENIES** the Commissioner's cross-motion.[2]

## II.    PROCEDURAL HISTORY

On May 11, 2021, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, stating a disability onset date of June 5, 2019.  Administrative Record (AR) 216–17.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  AR 128–32, 134–41.  An ALJ held a

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 8.

hearing on March 7, 2023, and issued an unfavorable decision on April 4, 2023.  AR 18–78.  The Appeals Council denied Plaintiff's request for review on January 12, 2024.  AR 7–12.  Plaintiff appealed the decision to the U.S. District Court for the Northern District of California on February 28, 2024.  AR 3059–61.  On May 2, 2024, the district court remanded the case.  AR 3063–67; *see* Order Remanding Case (Dkt. No. 9), *Sabrina M. v. O'Malley*, No. 3:24-cv-01191-VC (N.D. Cal. May 2, 2024).  The parties stipulated that on remand, the Commissioner would, *inter alia*, "[r]eevaluate the medical opinions and prior administrative findings," and "[r]eevaluate [Plaintiff's] subjective symptom testimony."  AR 3064–65.

On June 12, 2025, the same ALJ held another hearing and again heard testimony from Plaintiff and a VE.  AR 2993–3058.  The ALJ issued a second unfavorable decision on August 18, 2025.  *Id.*  The Appeals Council did not assume jurisdiction of the case, and the ALJ's decision became the final decision of the Commissioner.  ECF No. 11 at 1 (Pl.'s Statement of Facts); ECF No. 14 at 2 (Def.'s Statement of Facts).  This case followed on October 8, 2025.  ECF No. 1. Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

Plaintiff raises two issues on appeal:  (1) whether the ALJ erred in evaluating the medical opinions of record; and (2) whether the ALJ failed to provide clear, convincing, and well-supported reasons for discounting Plaintiff's symptom testimony.  Pl.'s Mot. at 1.  Plaintiff requests that the Court remand the case "for further administrative proceedings and a new decision."  *Id.* at 15.

In sum, the Court concludes that the ALJ erred in evaluating the medical opinions and Plaintiff's testimony—therefore, remand is warranted.

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards.  *Id.*  Substantial means "more than a mere scintilla," but

only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks, "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

## V.    DISCUSSION

### A.    Framework For Determining Whether A Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3)(A)

United States District Court
Northern District of California

3

– (B)).  To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis.  *See* 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* at § 416.920(a)(4) (same standard for supplemental security income).  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," defined as "work done for pay or profit that involves significant mental or physical activities."  *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(i)) (cleaned up).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since June 5, 2019, the alleged disability onset date.  AR 2999.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," meaning "that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'"  *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe impairments:  "narcolepsy; migraines; depressive disorder; anxiety disorder; obsessive-compulsive disorder; post-traumatic stress disorder."  AR 2999.  The ALJ further determined that since October 25, 2022, Plaintiff has also had the following additional severe impairment:  "autism spectrum disorder (20 C.F.R. 404.1520(c))."  *Id.*

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *id.* at Pt. 404 Subpt. P, App. 1.  The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity."  *Id.* at § 404.1525(a).  Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing."  *Id.* at § 404.1525(c)(3).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in

United States District Court
Northern District of California

United States District Court
Northern District of California

original) (footnote omitted).  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings.  AR 3003.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity (RFC), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past five years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1)(i).  If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled.  *Id.* at § 404.1520(f).  Here, the ALJ determined Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant can understand and remember both simple and detailed instructions; the claimant has concentration, persistence, and pace for 2-hour blocks, after which she needs an employer-scheduled break; the claimant can deal with people (including the general public, coworkers, and supervisors) on an occasional basis; and the claimant can tolerate occasional work routine changes.

AR 3007.  The ALJ determined Plaintiff has past relevant work but is unable to perform any past relevant work.  AR 3025.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114–15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles (DOT).[4] *Id.* Here, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including mail clerk (DOT 209.687-026), routing clerk (DOT 222.687-022), and garment sorter (DOT 222.687-014). AR 3025–26. As such, the ALJ determined Plaintiff was not disabled. AR 3026.

## B.    Medical Opinions

Plaintiff argues that remand is warranted for further consideration of the medical opinion evidence of record because (1) the ALJ's persuasiveness findings regarding the medical opinions of Dr. Jakubowski, Dr. Chandler, Dr. Forrest, and Ms. Caffery are not supported by substantial evidence; and (2) the ALJ "overlooked numerous other opinions in the record that were more restrictive than the RFC assessment." Pl.'s Mot. at 2:2–11:26. Regarding the four medical opinions, Plaintiff argues "the ALJ presented the mental status findings of record as largely benign, glossing over numerous, consistently abnormal mental status findings," and the ALJ "relied heavily upon Plaintiff's daily activities without considering her numerous limitations in performing these activities consistently." *Id.* at 2:3–10. The Commissioner contends that the ALJ (1) "rationally assessed the persuasiveness of the medical opinions based on their supportability and consistency with the record"; and (2) discussed all medical opinions in the record. Def.'s

---

table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[4] The DOT classifies jobs by their exertional and skill requirements. *See* 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

Mot. at 5:4–7:21.

In sum, for the reasons stated below, the Court concludes that the ALJ erred in her consideration and articulation of the medical opinions in the record.  Because the ALJ's rejection of these opinions impacted the ALJ's determination that Plaintiff could perform jobs in the national economy, the error was not harmless.

### 1. Legal Standard

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of medical opinions in the record using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c.  *See Woods v. Kijakazi*, 32 F.4th 785, 791–93 (9th Cir. 2022) (embracing the Commissioner's new regulatory framework for evaluating medical opinions).  Under these new regulations, the ALJ is asked to consider five factors:  (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements.  *See* 20 C.F.R. §§ 404.1520c(c)(1) – (5), 416.920c(c)(1) – (5).  Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors.  *See id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence."  *Woods*, 32 F.4th at 791–92 (cleaned up); *see* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").  "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim."  *Woods*, 32 F.4th at 792 (cleaned up); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical

finding(s) will be.").

The new regulations replace the former hierarchy of medical opinions and no longer require the ALJ to give greater weight to the medical opinions of treating physicians. *Woods*, 32 F.4th at 787; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Now, the ALJ is free to consider the medical opinions equally and may find an opinion more persuasive than others provided that substantial evidence supports such a finding. *Woods*, 32 F.4th at 787. Substantial evidence will be found when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

### 2.    Medical Opinion of Marine Jakubowski, Psy.D.

Marine Jakubowski, Psy.D., is a consultative psychological examiner who evaluated Plaintiff in February 2022. AR 781–89, 3020. Dr. Jakubowski reviewed Plaintiff's medical records, conducted a clinical interview with Plaintiff, assessed Plaintiff's intellectual functioning, and performed a mental status examination on Plaintiff. AR 782–85. On the mental status exam, Dr. Jakubowski found that Plaintiff had an anxious mood but had otherwise normal findings. AR 785. Dr. Jakubowski opined that Plaintiff's "prognosis is somewhat depended [*sic*] on her mental health and treatment compliance" and that her prognosis "is fair with treatment and intervention." AR 787. Specifically, Dr. Jakubowski opined that

> [d]ue to her anxiety and symptoms associated with her depression, [Plaintiff] will likely have difficulty tolerating stressful work environments, have problems with social engagement, and have difficulty maintaining consistent 40hour workweek attendance, in particular with any fast-paced work environment. In a work setting, she will have difficulties functioning independently and will need a supervisor to provide repetition of instructions when learning new tasks and provide prompts throughout the day for her to stay on task.

8

*Id.* Dr. Jakubowski found that Plaintiff's intellectual functioning was all within normal limits or appropriate. AR 785–86. Dr. Jakubowski found that Plaintiff is moderately limited in her ability to understand, remember, and perform complex written and oral instructions; to complete a normal workday or workweek without interruptions; to accept instructions from supervisors; and to deal with the usual stresses encountered in competitive work environment. AR 787–88. And Plaintiff is mildly limited in her ability to understand, remember, and perform simple written and oral instructions; to perform work activities without special or additional supervision; and to interact with coworkers and with the public. *Id.* Further, Dr. Jakubowski found that Plaintiff is not limited in her ability to maintain regular attendance in the workplace and perform work activities on a consistent basis. *Id.*

The ALJ found Dr. Jakubowski's opinion "globally less persuasive" than the "administrative medical findings of Dr. Dilger and Dr. Friedburg," stating:

> Dr. Jakubowski noted anxious mood (with congruent affect), but otherwise observed largely unremarkable mental status, including normal mannerisms, 'good' eye contact, easily established rapport, normal gross motor function, clear and rational thought process, no evidence of hallucinations, delusions, or other unusual thought content, normal verbal response time and alertness, no speech articulation problems, appropriate abstractions, insight/judgment, and fund of knowledge, and the abilities to spell 'world' forward and backwards and recite 5 digits forward and 5 digits backward (Ex. 5F). In combination, that evidence largely supports her particular opinions regarding only mild limitations as to simple instructions and no limitation in ability to perform work or maintain regular attendance on a consistent basis. However, that same evidence is non-supportive of her additional above-described assessment regarding supervisor prompts/repetition of instructions on an average workday. It is also non-supportive of Dr. Jakubowski's opinions regarding moderate limitations in ability to complete a normal workday or workweek without interruptions from mental symptoms or do [*sic*] deal with usual work stresses, to the extent those assessments may be construed as any restriction(s) regarding actual off task behavior or workplace absences.

AR 3021–22. The ALJ found that Dr. Jakubowski's opinion is "inconsistent with the balance of the medical and nonmedical evidence, which is instead most consistent with the above-listed mental residual functional capacity for all of the reasons previously discussed in evaluating the

9

administrative medical findings of Dr. Dilger and Dr. Friedburg."[5]  AR 3022.

Plaintiff argues that the ALJ did not explain how Dr. Jakubowski's normal mental status findings "rendered Dr. Jakubowski's opinion unpersuasive, when considered in the context of the variable mental status findings shown throughout the record as a whole."  Pl.'s Mot. at 3:25–4:20. The Commissioner contends that Dr. Jakubowski's opinion was not supported by objective medical evidence because "Dr. Jakubowski's examination was completely normal."  Def.'s Mot. at 5:20–22.  The Commissioner further contends that Dr. Jakubowski's opinion is inconsistent with Plaintiff's activities, the fact that her conditions improved with treatment, and mental status examinations showing few abnormalities.  *Id.* at 6:11–25.

Here, the Court finds that the ALJ's persuasiveness finding regarding Dr. Jakubowski's opinion is not supported by substantial evidence.  It is black letter administrative law that an ALJ must provide a reasoned explanation for their findings, including in the context of adjudicating social security claims.  *See Woods*, 32 F.4th at 792 (explaining ALJ cannot reject a medical opinion "as unsupported or inconsistent without providing an explanation supported by substantial evidence"); *see also Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ("*Medical opinions.*  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  However, as discussed below, the ALJ failed to provide a reasoned explanation, supported by substantial evidence, for *why* Dr. Jakubowski's opinion is unsupported or inconsistent with the record.  This was error.

Regarding supportability, the ALJ stated that Plaintiff's largely normal mental status and normal intellectual functioning do not support Dr. Jakubowski's findings that Plaintiff has

---

[5] The ALJ found the opinions of Mark Dilger, M.D. (State agency psychiatrist at the initial determination level) and Irmgard Friedburg, Ph.D. (State agency psychologist at the reconsideration determination level) "partially persuasive, while also concluding that the totality of the evidence is most consistent with the above-listed mental [RFC]."  AR 3017.  The ALJ found that the findings of Dr. Dilger and Dr. Friedburg regarding "moderate" functional limitations, to the extent they "may be construed as restrictions involving actual off-task behavior or workplace absences," non-persuasive.  *Id.*  The ALJ reasoned that the medical evidence and evidence of Plaintiff's activities and abilities are inconsistent with such findings.  AR 3018–19.

United States District Court
Northern District of California

moderate limitations in some work-related abilities.  AR 3021–22.  But the ALJ did not explain how these normal findings are non-supportive of Dr. Jakubowski's assessed limitations.  Notably, the ALJ focused only on the mental status exam but did not discuss Dr. Jakubowski's findings related to Plaintiff's clinical interview and review of Plaintiff's medical records.  *See* Pl.'s Reply at 2:19–3:25 ("[T]he hyper-focus of Defendant and the ALJ on the examination results, to the exclusion of all other findings and explanations presented by the medical sources, constituted a deficient evaluation of the supportability factor.").  Therefore, the Court finds the ALJ erred because she did not provide substantial evidence for her conclusion that Dr. Jakubowski's opinion was not fully supported by Dr. Jakubowski's examination.  *Cf. Jalissa P. v. Bisignano*, No. 24-cv-06465-SI, 2025 WL 2682578, at *8 (N.D. Cal. Sept. 19, 2025) ("Under the regulations, it was error for the ALJ not to address the supportability factor.").

Regarding consistency, the ALJ stated that Dr. Jakubowski's opinion is internally inconsistent because it notes that Plaintiff has moderate limitations in some abilities and no limitations in maintaining regular attendance in the workplace and performing work activities on a consistent basis.  AR 3020.  But the ALJ did not analyze whether Dr. Jakubowski's opinion is "consistent with the evidence from other medical sources and nonmedical sources in the claim," as required under the regulations.  *Woods*, 32 F.4th at 792.  Nor did the ALJ explain *why* the findings in Dr. Jakubowski's opinion are internally inconsistent.  Finally, contrary to the Commissioner's assertion, the ALJ's blanket statement that Dr. Jakubowski's opinion is "otherwise inconsistent with the balance of the medical and nonmedical evidence" is insufficient to find Dr. Jakubowski's opinion unpersuasive.  AR 3022; Def's Mot. at 6:11–25; *see* Pl.'s Reply at 3:27–4:2 ("[O]ther than merely listing some activities, neither the ALJ nor Defendant make any effort to explain why the listed activities refuted the limitations set forth in the medical source opinions.").  Therefore, the Court finds the ALJ erred because she did not provide substantial evidence for her conclusion that Dr. Jakubowski's opinion was inconsistent with the record.  *See Thomas S. v. Comm'r of Soc. Sec.*, No. C21-05213-MAT, 2022 WL 268844, at *4 (W.D. Wash. Jan. 28, 2022) (finding error where "the ALJ failed to address whether [doctor's] opinion is more or less consistent 'with the evidence from other medical sources and nonmedical sources in the claim' and why [doctor's]

United States District Court
Northern District of California

opinion was more or less persuasive pursuant to the consistency factor").

Accordingly, the ALJ erred in her analysis of both the supportability and the consistency of Dr. Jakubowski's opinion—remand is thus warranted.

### 3.      Medical Opinion of Jacklyn Chandler, Ph.D.

Jacklyn Chandler, Ph.D., is a consultative psychological examiner who evaluated Plaintiff in February 2025.  AR 3020, 4185–92.  Dr. Chandler reviewed Plaintiff's medical records, and performed behavioral observations and a mental status examination on Plaintiff.  AR 4189.  On the behavioral observations and mental status exam, Dr. Chandler found:

> [Plaintiff] presented as an odd, timid, overweight, ambidextrous, Caucasian woman of medium stature.  She appeared her stated age, but she was immature for her age level.  She walked with a normal gait.  She was dressed appropriately, wearing casual clothing.  Her hygiene was adequate, but she appeared unkempt.  She appeared fatigued, but she oriented.  Her voice was shaky, and she spoke in a low tone.  She appeared to have no vision or hearing impairment.  Her thought process was linear.  Her thought content was logical.  There were no delusions, hallucinations, or other signs of thought disorder.  Her affect was restricted.  Her mood was markedly anxious.  No suicidal or homicidal ideation was reported.  Her attitude was cooperative.  She was genuine and polite.  Her intellectual functioning appeared to be intact.  She demonstrated adequate attention and concentration.  Her remote memory was grossly intact.  Her insight and judgment appeared to be compromised due to her psychiatric symptoms.

AR 4190–91.  Dr. Chandler found that Plaintiff "is likely to have moderate difficulty adapting to changes normal work settings, . . . may have some difficulty making judgments on complex work-related decisions, . . . had marked difficulty enduring the stress of the interview, . . . had moderate difficulty interacting appropriately with this examiner," and her "ability to interact with the public, supervisors, and coworkers appears to be markedly impaired."  AR 4191.  Overall, Dr. Chandler opined that Plaintiff has multiple marked or extreme limitations in work-related activities.  AR 4186–87.

The ALJ found Dr. Chandler's opinion "globally less persuasive" than the "administrative medical findings of Dr. Dilger and Dr. Friedburg," stating:

> Dr. Chandler reported unkempt appearance (but with 'adequate' hygiene), 'markedly anxious' mood, restricted affect, fatigued appearance, and compromised insight and judgment.  Regardless, she

12

further observed linear thought process, oriented status, logical thought content, no suicidal ideation, cooperative attitude, polite behavior, intact apparent intellectual functioning, grossly intact remote memory, and adequate attention and concentration (Ex. 15F). That evidence is inconsistent with Dr Chandler's severely restrictive opinion, particularly with regarding [*sic*] to 'marked' functional limitations.

AR 3021–22. The ALJ found that Dr. Chandler's opinion is "inconsistent with the balance of the medical and nonmedical evidence . . . for all of the reasons previously discussed in evaluating the administrative medical findings of Dr. Dilger and Dr. Friedburg." AR 3022.

Plaintiff argues that "the ALJ failed to explain how Dr. Chandler's findings as a whole— which were largely abnormal and painted a picture of a markedly anxious individual—were inconsistent with her opinion." Pl.'s Mot. at 4:21–5:17. The Commissioner contends that "Dr. Chandler did not observe significant abnormalities on the mental status examination she conducted that would have supported her opinion of numerous moderate and marked mental limitations." Def.'s Mot. at 5:24–26. The Commissioner further contends that Dr. Chandler's opinion is inconsistent with Plaintiff's activities, the fact that her conditions improved with treatment, and mental status examinations showing few abnormalities. *Id.* at 6:11–25.

Here, the Court finds that the ALJ's persuasiveness finding regarding Dr. Chandler's opinion is not supported by substantial evidence. Regarding supportability, the ALJ did not make an explicit finding; however, the ALJ appeared to find that Dr. Chandler's normal findings regarding Plaintiff do not support the finding that Plaintiff has marked limitations. AR 3021. Yet the ALJ did not explain why this is so. Regarding consistency, the ALJ found, without explanation, that Dr. Chandler's opinion is internally inconsistent because it notes that Plaintiff has multiple normal findings and marked functional limitations in some abilities. *Id.* Again, the ALJ did not analyze whether Dr. Chandler's opinion is "consistent with the evidence from other medical sources and nonmedical sources in the claim," as required under the regulations. *Woods*, 32 F.4th at 792. Therefore, for the reasons discussed above, the ALJ's conclusory findings— which lack any reasoned explanation of *why* Dr. Chandler's opinion is unsupported or inconsistent with the record—are insufficient to find Dr. Chandler's opinion unpersuasive.

Accordingly, the ALJ erred in her analysis of both the supportability and the consistency of

13

Dr. Chandler's opinion—remand is thus warranted.

### 4.      Medical Opinion of Louise Forrest, M.D.

Louise Forrest, M.D., is a psychiatrist who has treated Plaintiff since October 2016, with a treatment frequency of every one to three months. AR 799. Dr. Forrest submitted an opinion in September 2022. AR 799–804, 3020. Dr. Forrest lists Plaintiff's current diagnoses as: "Major depressive disorder, recurrent, severe; obsessive compulsive disorder, post traumatic stress disorder, and generalized anxiety disorder." AR 799. Dr. Forrest opined that Plaintiff's prognosis is "guarded," and that narcolepsy contributes to Plaintiff's mental impairment. AR 800. Dr. Forrest found that Plaintiff has moderate to extreme limitations in areas of "understanding and memory," moderate to extreme limitations in areas of "sustained concentration and persistence," moderate to marked limitations in areas of "social interaction," and moderate to extreme limitations in areas of "adaptation." AR 801–04. Further, Dr. Forrest opined that Plaintiff would miss ten or more days of work a month due to mental impairment and would not be able to work on a regular and sustained basis at least 20% of the time. AR 804.

The ALJ found Dr. Forrest's opinion "globally less persuasive" than the "administrative medical findings of Dr. Dilger and Dr. Friedburg," stating:

> Dr. Forrest, in a separate letter authored in September 1, 2022 (the date of issuance of her opinion), remarked that [Plaintiff] had 'chronic and persistent depressed mood,' among other symptoms, with a 'guarded' prognosis (Ex. 7F/1). Dr. Forrest's longitudinal progress notes (for more than 4 consecutive years of psychiatric visits), incidentally and repeatedly document her characterization of [Plaintiff's] depressive disorder as 'in partial remission' (see, e.g., Ex. 11F/254, 272, 401, 473, 458; Ex. 13F/14, 32; Ex. 14F/19; Ex. 16F/1576). Regardless, Dr. Forrest's progress notes, while including isolated reporting of rambling/ruminative thoughts, also further variously feature reports of fair eye contact, endorsed 'ok' mood, observed 'full range' of mood/affect, endorsed 'ok' overall status, coherent speech, no suicidal ideation, neat dress/grooming, logical thoughts, and no evidence of thought disorder (see, e.g., Ex. 1F/31, 93, 137; Ex. 11F/436; Ex. 12F/211-214; Ex. 13F/128-129, Ex. 16F/1577-1580). In combination, that evidence does not support her severely limiting functional assessment.

AR 3021–3022. The ALJ found that Dr. Forrest's opinion is "inconsistent with the balance of the medical and nonmedical evidence . . . for all of the reasons previously discussed in evaluating the administrative medical findings of Dr. Dilger and Dr. Friedburg." AR 3022.

14

Plaintiff argues that the ALJ erred in portraying Dr. Forrest's "mental status findings as more normal than abnormal," and "failed to recognize that even periodic abnormalities in mental status can significantly impact a claimant's ability to sustain full-time competitive work activity." Pl.'s Mot. at 5:18–6:7. Plaintiff further argues that the ALJ "failed to articulate how depression in 'partial' remission" is inconsistent with Dr. Forrest's opinion. *Id.* at 6:25–7:6. The Commissioner contends that "Dr. Forrest's treatment notes routinely showed many normal findings on mental status examinations, which could not support her assessment of significant medical limitations." Def.'s Mot. at 6:5–7. The Commissioner further contends that Dr. Forrest's opinion is inconsistent with Plaintiff's activities, the fact that her conditions improved with treatment, and mental status examinations showing few abnormalities. *Id.* at 6:11–25.

Here, the Court finds that the ALJ's persuasiveness finding regarding Dr. Forrest's opinion is not supported by substantial evidence. Regarding supportability, the ALJ stated that Dr. Forrest's longitudinal progress notes documenting Plaintiff's depressive disorder as "in partial remission," and Dr. Forrest's progress notes reporting normal mental status findings, do not support Dr. Forrest's "severely limiting functional assessment" of Plaintiff. AR 3022 (citing, *e.g.,* AR 469, 2316, 2881–84, 3452, 4153, 5768). But the ALJ did not explain why one of Plaintiff's myriad diagnosed conditions being in "partial remission" renders Dr. Forrest's opinion unsupported. Pl.'s Mot. at 6:25–7:6. Nor did the ALJ grapple with the abnormal findings in Dr. Forrest's progress notes or explain why these findings do not support Dr. Forrest's opinion. *See* Pl.'s Reply at 1:24–2:7 (citing, *e.g.,* AR 455 (finding "mood anxious and affect congruent with restricted range, thoughts logical with +obsessional ruminative thinking"), 551 (finding psychomotor agitation, rambling speech, anxious mood, and tangential thought process), 2553 (finding "speech soft, mood depressed and affect dysphoric with restricted range, thoughts with rigidity and negative ruminations" and "+ thoughts of self harm"), 2578 (finding "speech rambling, mood depressed and affect constricted range, thoughts logical, overly inclusive of detail, with intrusive thoughts, + intrusive suicidal ideation without intent or plan"), 3567 (noting "patient describes mood as depressed")). Regarding consistency, other than referring to Dr. Forrest's own notes, the ALJ did not make any explicit findings. And again, the ALJ did not analyze whether

15

Dr. Forrest's opinion is "consistent with the evidence from other medical sources and nonmedical sources in the claim," as required under the regulations. *Woods*, 32 F.4th at 792. Therefore, for the reasons discussed above, the ALJ's conclusory findings—which lack any reasoned explanation of *why* Dr. Forrest's opinion is unsupported or inconsistent with the record—are insufficient to find Dr. Forrest's opinion unpersuasive.

Accordingly, the ALJ erred in her analysis of both the supportability and the consistency of Dr. Forrest's opinion—remand is thus warranted.

### 5.    Medical Opinion of Margaret Caffery, LMFT

Margaret Caffery, LMFT, is a therapist who has conducted regular therapy sessions with Plaintiff since March 2020. AR 792, 1924, 2026, 5884–5992. Ms. Caffery submitted an opinion in April 2022. AR 794–98, 3020. Ms. Caffery lists Plaintiff's current diagnoses as: "PTSD (depression and anxiety), narcolepsy, migraine headaches, Irritable Bowel Syndrome, Restless Leg Syndrome, insomnia, nightmares, [and] limited social interactions due to a fragile nervous system including anxiety and depression." AR 792. Ms. Caffery found that Plaintiff has moderate limitations in areas of "understanding and memory," moderate to marked limitations in areas of "sustained concentration and persistence," mild limitations in areas of "social interaction," and moderate to marked limitations in areas of "adaptation." AR 794–97. Further, Ms. Caffery opined that Plaintiff would miss thirty days of work a month due to mental impairment and would not be able to work on a regular and sustained basis at least 20% of the time, due to Plaintiff's anxiety, stress levels, physical challenges, and being "prone to fall asleep anywhere at any time." AR 797.

The ALJ found Ms. Caffery's opinion "globally less persuasive" than the "administrative medical findings of Dr. Dilger and Dr. Friedburg," stating:

> Ms. Caffery saw [Plaintiff] over multiple years for essentially weekly tele-video therapy sessions. However, in her own progress notes, she repeatedly noted [Plaintiff] as tutoring a neighbor in mathematics, including at least intermittently for remuneration (Ex. 10F/10, 35). That evidence, even without more, is non-supportive of Ms. Caffery's severely limiting opinion. Further, Ms. Caffery's longitudinal progress notes (including for visits both prior to and after the issuance of her opinion) otherwise document numerous reports of activities and abilities that, in combination, are suggestive of adequate and even

16

significant adaptive functionality, social interaction ability, and ability to maintain concentration, persistence, or pace. As representative examples, Ms. Caffery variously documented [Plaintiff] as reporting activities in being online 'for over 2 hours,' making ornaments (Ex. 10F/35), caring for pet fish including in protecting new baby guppies (Ex. 10F/7), bathing her and her mother's dogs (Id.), painting plastic-ceramic figures (Ex. 10F/1), decluttering and cleaning her cottage, albeit in 'moving more slowly as she does not have the help with the holidays' (Ex. 18F/43), taking care of her sister's toddlers in the context of her sister's toe injury 'so [her] sister can have less time on her feet' (Ex. 18F/34), listening to mysteries on her headset (Id.), cleaning a barn with her mother (Ex. 18F/18), spending 'much time' monitoring her doctor's appointments and the wellbeing of her animals (Ex. 18F/14), being 'very busy with so many meetings and family' (Ex. 18F/6), studying Esperanto (Ex. 18F/4), coloring by numbers and journaling to track her sleep patterns (Ex. 16F/1577-1578), and being 'busy with [her] uncle Dan doing projects' (Ex. 17F/2). She further reported that 'while we are on the face time [Plaintiff] usually does crafts,' adding, 'So while we talk she either colors or paints as a way to help her focus' (Ex. 10F/65). All of this evidence, in combination, is also non-supportive of Ms. Caffery's severely restrictive functional assessment.

AR 3021–3022. The ALJ found that Ms. Caffery's opinion is "inconsistent with the balance of the medical and nonmedical evidence . . . for all of the reasons previously discussed in evaluating the administrative medical findings of Dr. Dilger and Dr. Friedburg." AR 3022.

Plaintiff argues that the ALJ failed "to analyze the supportability of Ms. Caffery's opinion." Pl.'s Mot. at 7:7–9:25. Regarding consistency, Plaintiff argues that "the ALJ's reliance upon Plaintiff's activities was not a sufficient reason to discount Ms. Caffery's opinion." *Id.* The Commissioner contends that Ms. Caffery's treatment records show that "Plaintiff could work in spite of her allegedly disabling impairments," and that "Plaintiff could do many other things that showed generally intact mental functioning." Def.'s Mot. at 5:26–6:5. The Commissioner further contends that Ms. Caffery's opinion is inconsistent with Plaintiff's activities, the fact that her conditions improved with treatment, and mental status examinations showing few abnormalities. *Id.* at 6:11–25.

Here, the Court finds that the ALJ's persuasiveness finding regarding Ms. Caffery's opinion is not supported by substantial evidence. Regarding supportability, the ALJ did not make any findings regarding the extent to which Ms. Caffery supported her medical opinion with the relevant objective medical evidence within that opinion, as required by the regulations. *Woods*, 32 F.4th at 791–92; *see also Wheeler v. Kijakazi*, No. 1:21-cv-1225 JLT BAM, 2023 WL 4146215, at

*3 (E.D. Cal. June 23, 2023) ("With supportability, the ALJ should consider the extent to which a medical source supports his or her own opinion, and explains the objective medical evidence."). Notably, while the Commissioner discusses how the evidence does not "support" the other three medical opinions, the Commissioner does not mention supportability at all when discussing Ms. Caffery's opinion. *See* Def.'s Mot. at 5:15–6:10. The Court therefore agrees with Plaintiff that by not discussing the objective medical evidence within Ms. Caffery's opinion, the ALJ "overlooked her duty to analyze the supportability of Ms. Caffery's opinion." Pl.'s Mot. at 7:7–24. This error alone warrants remand. *See Wheeler*, 2023 WL 4146215, at *3 ("[T]he ALJ failed to properly address the supportability factor under the new regulations, and remand is appropriate on these grounds."). Even assuming, *arguendo*, that the ALJ's focus solely on Ms. Caffery's progress notes was sufficient to address the supportability factor, the ALJ's reasoning is insufficient to reject the opinion. The ALJ explained that Ms. Caffery's progress notes—documenting a variety of activities by Plaintiff—are "non-supportive of Ms. Caffery's severely restrictive functional assessment." AR 3021–3022. Yet the ALJ did not explain *why* Plaintiff's activities are non-supportive of Ms. Caffery's opinion. Regarding consistency, other than referring to Ms. Caffery's own notes, the ALJ did not make any explicit findings. And again, the ALJ did not analyze whether Ms. Caffery's opinion is "consistent with the evidence from other medical sources and nonmedical sources in the claim," as required under the regulations. *Woods*, 32 F.4th at 792. Therefore, for the reasons discussed above, the ALJ's conclusory findings—which lack any reasoned explanation of *why* Ms. Caffery's opinion is unsupported or inconsistent with the record—are insufficient to find Ms. Caffery's opinion unpersuasive.

Accordingly, the ALJ erred in her analysis of both the supportability and the consistency of Ms. Caffery's opinion—remand is thus warranted.

### 6.    Other Medical Evidence

Plaintiff argues that the ALJ "failed to acknowledge or address other opinion evidence in the record" where "several different physicians opined that Plaintiff needed to take strategic naps during the day to manage her narcolepsy." Pl.'s Mot. at 10:1–11:21. Plaintiff asserts that remand is warranted because "the ALJ failed to provide any analysis of these opinions, which were far

United States District Court
Northern District of California

more restrictive than the RFC assessment." *Id.* at 11:15–18. The Commissioner contends that (1) because none of these medical sources constitute medical opinion, the ALJ was not required to discuss them; and (2) even if the sources did constitute medical opinion., the ALJ did not err because they conflict "with [Plaintiff's] ability to work, her other daily activities, and her treatment records." Def.'s Mot. at 7:1–21.

Here, the parties disagree on whether the opinions concerning Plaintiff's need for strategic naps constitute medical opinion. As discussed below, the Court finds that the ALJ erred in analyzing Plaintiff's subjective complaints regarding her need for strategic naps. Because the Court concludes that the ALJ must consider Plaintiff's need for strategic naps on remand, the Court need not determine whether the opinions at issue constitute formal medical opinion—the ALJ must consider this evidence in evaluating Plaintiff's subjective complaints.

## C.    Subjective Complaints

Plaintiff argues that the "ALJ failed to provide clear, convincing and well-supported reasons for discounting [her] symptom testimony," and that "remand is warranted for further consideration of [her] symptom testimony." Pl.'s Mot. at 12:1–15:11. The Commissioner contends that the "ALJ reasonably discounted Plaintiff's self-reports because they conflicted with her activities, including working, and other evidence in the treatment record." Def.'s Mot. at 1:24–5:3.

### 1.    Legal Standard

The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear

United States District Court
Northern District of California

> and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014–15 (emphasis in original) (cleaned up). Under this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (cleaned up). "In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021); *see also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.").

### 2.    Analysis

At the hearing in 2025, Plaintiff testified that she had to quit her past job as a teacher because she was sleeping through alarms, coming in late, and struggling to keep up with job responsibilities; she did not work in any capacity after she quit her teaching job; she attends weekly support groups over Zoom where she can choose to turn her camera off and not engage; she sometimes assists her mom with tasks like opening water; she has a driver's license and can drive up to 45 minutes at a time if she is alert, has taken her medication, slept enough the night before, and it is not around nap time; someone else drives her to appointments; she takes a nap between 10:30–11:00 a.m. for half hour to an hour; she takes a nap around 2:00 p.m. for hour and a half to two hours; she takes a nap between 5:00–5:30 p.m. for half hour to two hours depending on how she is doing that day; and that some days she has "really bad days where [she's] just really sleepy and [has] a really hard time staying awake."[6]  AR 3043–53.

The ALJ summarized Plaintiff's testimony as follows:

> Thereafter during the supplemental hearing in June of 2025 (post-remand), [Plaintiff] testified that she could not keep working as she

---

[6] At the hearing in 2023, Plaintiff testified that she takes at least one scheduled nap each day (for about half an hour) and that depending on the day, she takes "several more, unplanned naps" (each lasting half an hour to two hours). AR 56–57. Plaintiff further testified that her naps prevent her from falling asleep in "weird places" like "on the toilet or standing up over the car seat or eating." *Id.* at 56.

20

was sleeping through her alarms and was struggling to keep up with grading and with meetings. [Plaintiff] further testified that she usually takes a nap in the late morning (of half an hour to an hour in duration) and another nap around 2:00 p.m. (of an hour and a half to two hours in duration), adding that she sometimes also takes a nap in the evening. Asked how long that occasional evening nap lasts, [Plaintiff] replied, 'It depends. If I had a good nap at 2, maybe only like half an hour.' She added that with no good nap at 2:00 p.m., her evening nap 'can go up to 2 hours' in duration. Regardless, [Plaintiff] also testified that she engages in multiple virtual classes/support groups, and added that she helps her mother with things like opening her water or jars. Asked what she does with her time, [Plaintiff] replied that she feeds her dogs 'when I remember' and takes them outside. She added that she will 'try and work on my house because it's a mess.' [Plaintiff] additionally testified that she does not 'really' drive but has a driver's license for emergencies. Asked whether the DMV restricted her driver's license, [Plaintiff] replied, 'No, they let me keep it because the doctor said I follow all the guidelines that he set forth. I'm more restrictive than even he was with me.' Asked what her doctor's restriction was int hat [*sic*] context, [Plaintiff] replied, 'His was 45 minutes [of driving].' (Supplemental Hearing Testimony).

AR 3009. The ALJ rejected Plaintiff's testimony because her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but did not make any findings that Plaintiff was malingering. *See* AR 3009. Thus, to find Plaintiff's testimony not credible, the ALJ was required to "mak[e] specific findings as to credibility and stat[e] clear and convincing reasons for each." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff argues that the ALJ erred in failing "to consider how the waxing and waning nature of Plaintiff's symptoms was in fact entirely consistent with her allegations of an inability to sustain work activity on a regular and consistent basis." Pl.'s Mot. at 13:10–23. Plaintiff further argues that the ALJ failed "to consider that [her] activities were done intermittently and only within the limited parameters allowed by Plaintiff's narcolepsy and various mental impairments." *Id.* at 13:25–14:14. The Commissioner contends that the "ALJ discounted Plaintiff's claims because her activities contradicted her allegations of disabling impairments." Def.'s Mot. at 2:11–3:36. The Commissioner further contends that "the ALJ explained in detail why Plaintiff's reports

21

about her naps were not fully reliable:  they conflicted with her ability to work, her other daily activities, and her treatment records." *Id.* at 7:17–20.

Here, the Court finds that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.  Contrary to the Commissioner's contention, the ALJ did not explain why Plaintiff's testimony regarding her need for naps throughout the day was not credible  *See id.*  Indeed, other than recounting Plaintiff's testimony, the ALJ did not refer to Plaintiff's symptom testimony regarding her naps *at all* in the ALJ's analysis of Plaintiff's subjective complaints.  *See* AR 3009–17.  Instead, the ALJ made a general statement that "[i]n addition to the inconsistency between the totality of the medical evidence and [Plaintiff's] allegations of disabling symptoms and limitations secondary to her impairments, other factors do not support [Plaintiff's] allegations."  AR 3014.  First, in her discussion of the medical evidence, the ALJ focused mainly on cataplexy and other symptoms, not on Plaintiff's strategic naps.  *See* AR 3009–14.  The ALJ made one reference to Plaintiff's self-reported "scheduled naps 'most days'" but seemingly discounted this report because Plaintiff reported that medication "does help." AR 3012 (citing Ex. 13F/225).  However, the ALJ did not provide reasons, supported by the record, that show Plaintiff's medication reduces or eliminates Plaintiff's need for scheduled naps. Moreover, the ALJ did not discuss the record evidence supporting Plaintiff's testimony that she manages her condition by taking naps during the day.  *See* Pl.'s Mot. at 10:1–14 (citing AR 447 (statement from Dr. Driscoll encouraging Plaintiff to try "short naps as needed during day when feeling drowsy / mentally foggy"), 1755 (statement from Dr. Singh directing Plaintiff to continue "taking naps in the afternoon"), 3484–85 (statement from Dr. Castillo advising Plaintiff to take "scheduled strategic naps as needed"), 3505–06 (same), 5831 (statement from Dr. Castillo treating Plaintiff for "excessive daytime hypersomnia assoc with Narcolepsy" and advising Plaintiff to take "scheduled naps as needed (she usually takes 2 naps per day, 30–60min)"), 5869 (same)).

Second, the ALJ listed a plethora of activities Plaintiff has engaged in between 2020–2025 and found that "[i]n combination, all of these acknowledged activities and abilities are inconsistent with any allegations of off task behavior, whether secondary to fatigue and/or catalepsy from narcolepsy or otherwise."  AR 3014–16.  But the ALJ did not explain how her finding that

Plaintiff's activities are inconsistent with being "off-task" shows that Plaintiff's testimony regarding her scheduled naps is not credible. The ALJ did not explain the frequency or duration of Plaintiff's activities; nor did the ALJ point to any evidence showing that Plaintiff could not engage in intermittent activities while also completing her scheduled naps. Both the ALJ and the Commissioner make much of the evidence that on two occasions—in October 2021 and in May 2022—Plaintiff reported to her therapist that she tutored her neighbor in math. *See* Def.'s Mot. at 2:11–3:3; AR 3016–17 (citing Ex. 10F/10, 35). Yet again, the ALJ did not explain how these two instances undermine Plaintiff's testimony regarding her scheduled naps. *See* Pl.'s Reply at 6:11–24. Further, the ALJ focused on Plaintiff's permitted activities without acknowledging her restrictions. For example, while the ALJ discussed Plaintiff's ability to drive, the ALJ did not discuss the panoply of criteria that Plaintiff must meet prior to engaging in driving. *See* AR 3009, 3043–53. In short, by failing to explain *how* the evidence renders Plaintiff's *specific testimony* regarding her naps not credible, the ALJ repeated the same errors as in her previous decision. *See* AR 3075 (stating that on previous remand, the Appeals Council found that the ALJ "did not explain how any of the cited activities of living undermine [Plaintiff's] alleged symptoms or demonstrate the ability to perform work-related activities on a regular and continuing basis"). As such, the Court finds that the ALJ erred in failing to identify clear and convincing reasons for rejecting Plaintiff's testimony regarding her need for scheduled naps. *See Berry*, 622 F.3d at 1234 (requiring the ALJ to "identify what testimony is not credible"); *Smith*, 14 F.4th at 1113 (requiring the ALJ to provide clear and convincing reasons for "reject[ing] the specific portions of the claimant's testimony that the ALJ has found not to be credible"); *Lambert,* 980 F.3d at 1277 (holding ALJ erred where she "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (emphasis in original).

Plaintiff further argues that the ALJ's error carried over to the RFC assessment which did not sufficiently account for Plaintiff's need for naps. Pl.'s Mot. at 11:5–22. The Court agrees. In her RFC assessment, the ALJ found that Plaintiff has "pace for 2-hour blocks, after which she needs an employer-scheduled break"; however, the ALJ did not specify the amount of time for these breaks or whether they would be long enough to accommodate Plaintiff's naps. AR 3007;

United States District Court
Northern District of California

*see* AR 3043–53 (Plaintiff testifying that her naps last between half hour and two hours).

Accordingly, the Court concludes that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms. As discussed, this error was not harmless because it impacted the ALJ's determination that Plaintiff could perform jobs in the national economy. Remand is thus warranted.

**D.    Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits. *See G.P. v. Dudek*, No. 24-cv-00088-VKD, 2025 WL 945813, at *4 (N.D. Cal. Mar. 28, 2025) ("If the Court determines that there has been reversible legal error, the Court must then decide whether to remand for further proceedings or for an automatic award of benefits."). The Social Security Act permits courts to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019 ("Accordingly, every Court of Appeals has recognized that in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits."). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

"In determining whether to remand for benefits, the Ninth Circuit has devised a 'three-part credit-as-true standard.'" *Dwight F.*, 2024 WL 3580823, at *2 (citing *Garrison*, 759 F.3d at 1020). Courts use the credit-as-true rule to take subjective symptom testimony or medical opinion evidence "to be established as true." *Garrison*, 759 F.3d at 1019–20. Under the following tripart credit-as-true standard, each part must be satisfied for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;
>
> (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and

United States District Court
Northern District of California

(3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020; *see Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("We conclude that each of the credit-as-true factors is satisfied and thus that remand for the calculation and award of benefits is warranted.").

However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther*, 891 F.3d at 877 (cleaned up). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, Plaintiff requests that the Court remand for further administrative proceedings and a new decision pursuant to Sentence Four of 42 U.S.C. § 405(g).[7] Pl.'s Mot. at 15:12–16. The Commissioner contends that the Court should affirm its decision. Def.'s Mot. at 7:22–25.

The Court finds that remand for the calculation and award of benefits is not warranted. Even crediting Plaintiff's discredited testimony regarding her strategic naps as true, the Court cannot say that there is "no doubt as to Plaintiff's disability." *Contra Jalissa P.*, 2025 WL 2682578, at *14. To be sure, "[t]he Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true." *Tennille S. v. Kijakazi*, No. 21-cv-09779-SI, 2023 WL 122396, at *13 (N.D. Cal. Jan. 6, 2023). But that is not the case here. If credited as true, Plaintiff's testimony establishes that she must take a nap between 10:30–11:00 a.m. for half hour to an hour, a nap around 2:00 p.m. for hour and a half to two hours, a nap between 5:00–5:30 p.m. for half hour to two hours depending on how she is doing that day, and that some days she has "a really hard time staying awake." AR 3043–53. Consistent with her RFC finding, the ALJ asked the Vocational Expert (VE) at the hearing

[7] In her Reply, Plaintiff requests that the Court remand with instructions to award benefits, or in the alternative, for further proceedings, pursuant to 42 U.S.C. § 405(g). Pl.'s Reply at 8:7–11.

25

whether a claimant who needed "an employer-scheduled break" every two hours could perform jobs in the national economy. AR 3055–56. The VE opined that this requirement was not work preclusive. *Id.* The ALJ next asked the VE whether a claimant who required "additional rest breaks [that] were unscheduled, and they were occurring such that 15% of the day is lost to these unscheduled breaks," could perform jobs in the national economy. AR 3056–57. The VE opined that this requirement was work preclusive because "[o]ff task is limited to 12%." *Id.* The VE's answers do not conclusively establish disability, as Plaintiff's need for naps would not necessarily translate into losing 15% of the workday, in particular because the record contains no explanation of what the assumed workday is. For example, an eight-hour shift that starts at 6:00 a.m. might not be incompatible with Plaintiff's nap schedule.

Moreover, even if the Court additionally credits the medical opinions as true, the Court cannot say that there is no doubt as to Plaintiff's disability. Importantly, while the opinions all find that Plaintiff has some form of limitation, the opinions make different findings regarding Plaintiff's limitations. The Court cannot resolve these differences in opinion and formulate its own RFC—this sort of fact finding must be done by the ALJ on remand. *Luther*, 891 F.3d at 877.

If the case is remanded and the ALJ obtains VE testimony that aligns with the appropriate RFC finding, more detailed information can be developed about the impact of Plaintiff's need for naps and her limitations described in the medical opinions. As such, it is not clear that the ALJ would be required to find Plaintiff disabled after clarifying these issues, and remand for further proceedings is therefore appropriate. *See Derek S. v. Acting Comm'r of Soc. Sec.*, No. 3:20-cv-6169-RAJ, 2021 WL 3400979, at \*6 (W.D. Wash. Aug. 4, 2021) (holding remand for further proceedings warranted where it "would allow the ALJ the opportunity to present a proper hypothetical to a vocational expert"); *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021 (D. Ariz. 2019) (holding remand appropriate where ALJ omitted certain limitations from the hypothetical posed to the vocational expert); *Terrazas v. Astrue*, 726 F. Supp. 2d 1139, 1147 (E.D. Cal. 2010) (holding remand for further proceedings appropriate because "[r]eliance on a hypothetical that fails to include all accepted limitations is insufficient to carry the agency's burden of proving the ability to engage in alternative work"); *Hutton v. Astrue*, 491 Fed. App'x

850, 850–51 (9th Cir. 2012) (holding ALJ erred "in failing to include Hutton's post-traumatic stress disorder . . . in his hypotheticals to the vocational expert at Step Five," after finding it caused Hutton "'mild' limitations in the areas of concentration, persistence, or pace"); *Samples v. Comm'r. of Soc. Sec. Admin.*, 466 Fed. App'x 584, 586 (9th Cir. 2012) (holding remand for further proceedings appropriate where hypothetical question the ALJ posed to vocational expert regarding claimant's ability to find work in national economy was defective when it ignored one of the doctor's diagnoses of functional limitation on claimant's ability to accept instructions from supervisors and to respond appropriately to criticism from supervisors).

Accordingly, while remand is appropriate for the reasons discussed above, an award of immediate benefits is not appropriate because there remains some doubt that Plaintiff is or was disabled.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision.  This case is **REMANDED** for further administrative proceedings consistent with this order.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: June 3, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

27